# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

RAMAPOUGH MOUNTAIN
INDIANS, INC.,

                Plaintiff,

  -vs-

DANIEL THOMAS,

      Defendants.

Case No.: 2:21-cv-09649-JXN-JBC

*Document Filed Electronically*

---

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

---

**LUM, DRASCO & POSITAN LLC**
103 Eisenhower Parkway – Suite 401
Roseland, New Jersey 07068-1049
(973) 403-9000
NJ Attorney ID # 029021991
koconnor@lumlaw.com
Attorneys for Defendant, Daniel Thomas

DENNIS J. DRASCO, ESQ.
Of Counsel

KEVIN J. O'CONNOR, ESQ.
Of Counsel and On the Brief

#613621v3

**TABLE OF CONTENTS**

**PAGE**

TABLE OF CITATIONS ........................................................................ iii

PRELIMINARY STATEMENT ........................................................... 1

PROCEDURAL HISTORY................................................................... 4

STATEMENT OF FACTS ................................................................... 6

LEGAL ARGUMENT ......................................................................... 10

POINT I................................................................................................10

      PLAINTIFF'S CLAIMS ARE BARRED IN THEIR ENTIRETY
      BY THE DOCTRINE OF TRIBAL SOVEREIGN IMMUNITY...........10

          A.    Tribal Sovereign Immunity Is a Fundamental Limitation
                on the District Court's Subject Matter Jurisdiction. .................10

          B.    The Claims in the Amended Complaint Affect Matters of
                Tribal Sovereignty and Governance. ........................................12

POINT II ..............................................................................................18

      THE CLAIMS IN PLAINTIFF'S AMENDED COMPLAINT ARE
      BARRED BY THE FIRST AMENDMENT ..................................18

          A.    The Protections of the First Amendment Apply to State
                Law Tort Claims. ......................................................................18

          B.    The Alleged Statements By Defendant Relate to Matters
                of Public Concern and Are Entitled to Heightened
                Protection Under the First Amendment. ...................................19

POINT III..............................................................................................22

      PLAINTIFF FAILS TO ESTABLISH THAT THE STATEMENTS
      IN ISSUE WERE PROVABLY FALSE AND DEFENDANT
      ACTED WITH "ACTUAL MALICE" AS DEFINED BY THE

SUPREME COURT. ................................................................22

POINT IV ............................................................................27

THE DEFENDANT'S ALLEGED MOTIVES FOR
ADVOCATING THE DELAWARE NATION'S CPAIN POLICY
ARE TOTALLY IRRELEVANT IN  THE APPLICATION OF
FIRST AMENDMENT PROTECTIONS. .................................27

POINT V .............................................................................29

THE AMENDED COMPLAINT FAILS TO STATE A CLAIM
BASED UPON ALLEGED "RACIAL DISCRIMINATION"
THAT IS ACTIONABLE UNDER THE NJLAD. ...................29

POINT VI ............................................................................32

PLAINTIFF'S COMPLAINT FAILS TO STATE CLAIMS FOR
WHICH RELIEF CAN BE GRANTED AGAINST THE
DEFENDANT ....................................................................32

CONCLUSION .....................................................................35

# **TABLE OF CITATIONS**

**PAGE**

## **Cases**

Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co, 54 Cal.Rptr.2d 888 (Cal.App. 1st Dist. 1996).......................................................................26

Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ...........31

Bell Atlantic Corp. v. Twombly, 550 U.S. at 544, 127 S.Ct. 1955, L.Ed.2d 929 (2007)................................................................................................ 31, 32

Beverly Hills Foodland, Inc. v. United Food & Commercial Workers Union, Local 655, 39 F.3d 191, 196-97 (8th Cir. 1994) .......................................18

Blodgett v. Univ. Club, 930 A.2d 210, 222-23 (D.C. 2007) ...................................18

Cal. Valley Miwok Tribe v. United States, 515 F.3d 1262, 1263 (D.C.Cir. 2008)......................................................................................................29

Cherokee Intermarriage Cases, 203 U.S. 76 (1906) ...............................................14

Cherokee Nation v. Georgia, 30 U.S. (5 Pet.) 1, 16, 8 L.Ed. 25 (1831).................28

Connick v. Myers, 461 U.S. 138, 145, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).....................................................................................................19

Cook v. AVI Casino Enters., Inc. 548 F.3d 718, 727 (9th Cir. 2002).............. 12, 13

Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 758-59, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985) ...............................................19

E.F.W. v. St. Stephen's Indian High School, 264 F.3d 1297, 1302-03 (10th Cir. 2001)................................................................................................11

Edelman v. Jordan, 415 U.S. 651, 678, 94 S.Ct. 1347 (1974)................................10

Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005) .............................................32

Farah v. Esquire Magazine, 736 F.3d 528, 540 (D.C.Cir. 2013)............................18

First Nat. Bank of Boston v. Belotti, 435 U.S. 765, 776, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978)................................................................................19

Ford Motor Co. v. Dept. of Treasury, 323 U.S. 459, 467, 65 S.Ct. 347, 89 L.Ed.2d 389 (1945)................................................................................10

Garrison v. Louisiana, 379 U.S. 64, 74-75, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964).............................................................................................. 19, 26

Gertz v. Robert Welsh, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)................................................................................................22

Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991)...............13

Hagen v. Sisseton-Wahpeton, 205 F.3d 1040 (8th Cir. 2000)..................................10

Hustler Magazine, Inc. v. Falwell, 485 U.S. 46, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988)...................................................................................... 18, 21, 26

In re Federal Acknowledgement of Ramapough Mountain Indians, Inc., 31 IBA 61 (July 18, 1997), aff'd Ramapough Mountain Indians v. Babbitt, Civ. No. 98-2136 (JR), 2000 U.S. Dist. LEXIS 14479 (D.D.C. Sept. 30, 2000), aff'd sub nom., Ramapough Mt. Indians v. Norton, 25 Fed.Appx. 2, 2001 U.S. App. LEXIS 27805 (D.C.Cir. 2001) ...............................................25

Kahawaiolaa v. Norton, 386 F.3d 1271, 1278 (9th Cir. 2004)................................28

Kiowa Tribe of Oklahoma v. Mfg. Techs., Inc., 523 U.S. 751 118 S.Ct. 1700 L.Ed.2d 981 (1998)........................................................................12

Lewis v. Clarke, __ U.S. __, 137 S.Ct. 1285, 197 L.Ed.2d 631 (2017) ........... 12, 13

Linneen v. Gila River Indian Community, 276 F.3d 489 (9th Cir. 2002)................12

Marcone v. Penthouse International Magazine for Men, 754 F.2d 1072, 1082 (3d Cir. 1985) .............................................................................22

Moldea v. New York Times Co., 22 F.3d 310, 319-20 (D.C.Cir. 1994)................21

Mortensen v. First Federal Savings & Loan Assoc., 549 F.2d 884, 891 (3d Cir. 1977).................................................................................................11

Morton v. Mancari, 417 U.S. 535, 553, 94 S.Ct. 2474, 41 L.Ed.2d 296

(1974)..................................................................................................29

New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686
   (1964) .......................................................................... 18, 19, 21

Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008) ......................32

Rankin v. McPherson, 483 U.S. 378, 387, 107 S.Ct. 2891, 97 L.Ed.2d 315
   (1987)..............................................................................................20

Roff v. Burney, 168 U.S. 218 (1897)........................................................14

Rupp v. Omaha Indian Tribes, 45 F.3d 1241 (8th Cir. 1995)...................................12

San Diego v. Roe, 543 U.S. 77, 83, 125 S.Ct. 521, 160 L.Ed.2d 410 (2004) .........19

Sanderlin v. Seminole Tribe of Florida, 243 F.3d 1282 (11th Cir. 2001) ...............10

Santa Clara Pueblo v. Martinez, 436 U.S. 49 S.Ct. 1670, 56 L.Ed.2d 981
   (1998)........................................................................... 12, 14

Snyder v. Phelps, 562 U.S. 443, 451, 131 S.Ct. 1207, 179 L.Ed.2d 172
   (2011)........................................................................... 18, 19

Suarez Corp. v. McGraw, 125 F.3d 222 (4th Cir. 1997) .........................................11

Taylor v. Alabama Intertribal Council Title IV J.T.P.A., 261 F.3d 1032
   (11th Cir. 2001) ...............................................................................10

Unelko Corp. v. Rooney, 912 F.2d 1049, 1057-58 (9th Cir. 1990)..........................18

United States v. Government of Virgin Islands, 363 F.3d 276, 284 (3d Cir.
   2004)..............................................................................................11

Will v. Michigan Dept. of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304,
   105 L.Ed.2d 45 (1989)..........................................................................13

Worldwide Primates v. McGreal, 26 F.3d 1089, 1092 (11th Cir. 1994)..................26

**Statutes**

25 U.S.C. §§5101, et seq.........................................................................29

N.J.S.A. 10:5-1 ....................................................................................4

**Other Authorities**

25 C.F.R. §§83.7(a) – (g) ...................................................................23

25 C.F.R. §83.11(c) and (d) ...............................................................29

Cohen's Handbook of Federal Indian Law, §4.01[1][a](2012) ...................... 28, 29

Constitution of the Delaware Nation, Preamble (Ratified April 21, 1973, as amended November 13, 1999 ...........................................................6, 7

Delaware Nation Resolution #2021-008 ............................................7, 8

Federal Acknowledgement of Indian Tribes, 80 Fed. Reg. 37862, 37867 (2015) ..................................................................................29

Sarah Krakoff, They were Here First: American Indian Tribes, Race, and the Constitutional Minimum, 69 Stan. L. Rev. 491, 538 (2017) ...................29

Summary Under the Criteria and Evidence for Final Determination against Federal Acknowledgement of the Ramapough Mountain Indians, Inc. 29 (U.S. Dep't of the Interior, Off. Fed. Acknowledgement, RMI-V001-D007, p. 32 of 187, Jan. 16, 1996) ............................................24

U.S. Const. art. I, §8 .........................................................................28

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................1, 11

Fed. R. Civ. P. 12(b)(6) ....................................................................32

Fed. R. Civ. P. 8(a)(2) ......................................................................31

Rule 8 .............................................................................................31

## PRELIMINARY STATEMENT

Defendant, Daniel Thomas ("Defendant" or "Chief Thomas"), submits this Brief in support of his Motion to Dismiss the Amended Complaint of the Plaintiff, Ramapough Mountain Indians, Inc. ("RMI" or "Plaintiff") pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

Plaintiff asserts that the conduct alleged in the Amended Complaint violated the New Jersey Law Against Discrimination and constitutes tortious interference based upon the premise that Chief Thomas "falsely" advocated positions disputing RMI's indigenous history and lineage. At the heart of this matter is an ongoing historical dispute regarding RMI's status as an Indian tribe representing certain people alleged to have indigenous ancestry. Chief Thomas is a member of the Delaware Anadarko Nation, which legitimately disputes RMI's status because the group of individuals it purports to represent do not have a basis to claim ancestry to a historical Indian tribe from the areas in which the Lenni Lenape people originated. The Delaware Anadarko Nation has a strong sovereign interest in preserving its identity and protecting its homeland, the Lenapehoking. To this end, the Delaware Anadarko Nation has officially instituted a campaign against Corporations Posing as Indigenous Nations ("CPAIN") and appointed Chief Thomas as its representative to implement the campaign. In connection with the claims made by RMI, Chief

Thomas acted in his official capacity as a representative of the Delaware Anadarko Nation.

Thus, the doctrine of tribal sovereign immunity bars the claims asserted in the Complaint, despite Plaintiff's attempt at creative pleading by purportedly directing its claims against chief Thomas individually.  The official actions of Chief Thomas in advancing those important tribal interests are sovereign acts and cannot be subject to civil liability under state statutory or tort law.  Accordingly, the Complaint should be dismissed, with prejudice in its entirety.

Furthermore, RMI's claims are barred by the protections of the Free Speech Clause of the First Amendment.  The statements and positions taken by Chief Thomas in support of the Delaware Anadarko Nation's CPAIN campaign relate to matters of public interest and concern.  As such, any statements by Chief Thomas disputing the historical descent of RMI are  protected speech.  Additionally, in view of the fact that the Federal Government has rejected RMI's petition for recognition as an Indian tribe based upon lack of descent to any historic Indian tribe, any statements by Chief Thomas disputing RMI's status cannot be deemed to be provably false or made with "actual malice."

Even assuming, *arguendo*, that Plaintiff can survive the bar of tribal sovereign immunity and the First Amendment, the Amended Complaint fails to allege plausible claims for violation of the LAD or tortious interference.  The official

#613621v3

conduct by Chief Thomas in furtherance of sovereign tribal interests does not equate to "racial discrimination" or tortious interference under State law. Moreover, the Amended Complaint fails to provide sufficient factual support as to the "who, what, when, where, why and how" of the communications and actions by Chief Thomas that purportedly constitute tortious interference or discrimination. Thus, even if the Court determines that it has jurisdiction to consider the Amended Complaint, Plaintiff's causes of action should be dismissed for failure to state a claim.

## PROCEDURAL HISTORY

On April 16, 2021, RMI filed a Complaint against Chief Thomas asserting two causes of action:  violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et. seq.* ("NJLAD") (Count I), and Tortious Interference with Prospective Economic Relations (Count II). (Dkt. #1).  The gist of Count I is that Thomas' actions in furtherance of his activities as a CPAIN representative of the Delaware Anadarko Nation were motivated by racial animus and constitute racial discrimination.  Count II of the Complaint alleges that certain actions by Thomas tortiously interfered with RMI's economic relations with "allies, friends, and potential associates."

On December 6, 2021, Thomas filed a Motion to Dismiss the Complaint.  (Dkt. #15).  This Motion was based upon failure to properly allege the amount in controversy to sustain diversity jurisdiction; failure to allege sufficient minimum contacts between Thomas and New Jersey to support personal jurisdiction; and failure to state claims for relief for violation of the NJLAD and for tortious interference.

On January 20, 2022, RMI filed opposition to the Motion to Dismiss. (Dkt. #21).  On February 14, 2022, Thomas filed a reply brief which also asserted the defense of Tribal Sovereign Immunity.  (Dkt. #23).  RMI filed a sur-reply on March 7, 2022. (Dkt. #26).  Thomas filed a response to the sur-reply on March 14, 2022.

(Dkt. #27).

While the Motion to Dismiss was pending, the Court entered an Order requiring a Rule 16 Scheduling Conference, which was eventually scheduled for October 21, 2022.  (Dkt. #31).  Prior to the scheduled Conference, counsel for RMI advised that Plaintiff intended to file an Amended Complaint.  (Dkt. #32).  Thomas consented to the filing of the amended pleading, without prejudice.  (Dkt. #34).  On November 11, 2022, RMI filed its Amended Complaint with the Court.  (Dkt. #35).  On November 15, 2022, the court administratively terminated Defendant's motion to dismiss the original complaint in light of the filing of the Amended Complaint.  (Dkt. #36).  This Motion to Dismiss follows.

## STATEMENT OF FACTS

The Delaware Anadarko Nation, whose aboriginal name is Lenape or Lenni-Lenape, is a federally recognized Indian tribe.  It is the oldest known indigenous Nation from the Eastern Seaboard of North America and the first tribe to enter into a treaty with the United States of America.  See Constitution of the Delaware Nation, Preamble (Ratified April 21, 1973, as amended November 13, 1999.[1]  The historical territory of the Delaware Nation included present-day Delaware, New Jersey, and parts of southern New York and eastern Pennsylvania, known as Lenapehoking, the Lenape word for homelands.  Currently, the Delaware Anadarko Nation is in diaspora in Oklahoma.

The Delaware Anadarko Nation has strong interests in preserving its history, culture and heritage and protecting the Lenapehoking.  This is embodied in the Delaware Anadarko Nation's Constitution, which states it was adopted by the Lenape "with pride in our ancient heritage and with the determination to promote, through our united effort, the general well-being of our Nation and to secure unto our Nation and Nation's descendants the rights, powers and privileges provided by the laws of the Delaware Nation and the United States of America." Constitution of the Delaware Nation, Preamble.

---

[1] Exhibit A to the Declaration of Kevin J. O'Connor, Esq. in support of Motion to Dismiss Amended Complaint ("O'Connor Decl.").

The governance of the Delaware Anadarko Nation is implemented through an elected Executive Committee.  <u>Constitution of the Delaware Nation</u>, Article V.  The Constitution provides that "the Executive Committee shall have specific authority … to promulgate and enforce ordinances and codes to protect the peace, health, safety, and general welfare of Delaware tribal citizens …," and "shall have full authority to act on behalf of the Nation in all other matters upon which the Nation is empowered to act." <u>Constitution of the Delaware Nation</u>, Article VI. The Constitution also delineates the requirements for citizenship in the Delaware Anadarko Nation and authorizes the tribal Executive Committee to promulgate rules and regulations regarding citizenship.  <u>Constitution of the Delaware Nation</u>, Article III.

In recent years, the Delaware Anadarko Nation has become increasingly concerned with the threat arising from certain corporations purporting to represent indigenous persons claiming to be Lenape or Lenape descent, but without connection to the Lenape people.  On January 20, 2021, the Delaware Nation Executive Committee enacted Resolution #2021-008 to address this growing problem. (O'Connor Decl., Exhibit B).  This Resolution, enacted pursuant to the Executive Committee's authority under Article VI of the Constitution, recites the history of the Delaware Nation as a federally recognized Indian Tribe and states that the "Delaware Nation Executive Committee recognizes the increasing number of various

Corporations Posing as Indigenous Nations (CPAIN) claiming to be Lenape or of Lenape descent, they are primarily focused in the states of New York, New Jersey, Delaware and Pennsylvania." (Delaware Nation Resolution #2021-008). Pursuant to the Resolution, the Executive Committee appointed Chief Thomas as a representative of Delaware Nation "to combat Corporations Posing as Indigenous Nations (CPAIN) and other matters that could affect Delaware Nation." Id.

As Chief Thomas explained in connection with the announcement of his appointment as the representative of Delaware Anadarko Nation to address the CPAIN problem:

> These organizations vary in structure, sophistication, state purpose, and funding, yet all mask their theft within a robe of cultural preservation and unproven indigenous lineage. If a "pretendian" is an individual who falsely claims indigenous lineage, then CPAIN is what happens when a group of them decide to form a corporation, usually a non-profit, and pass it off to the public as a tribe. **** Indigenous people come in all shades and complexions; it is impossible to determine who is truly Native based on appearance. This is not an initiative to further the color divide within Indian country. There is simply a process to become an enrolled tribal member, if someone doesn't meet the criteria for enrollment, then what would give them authority to create their own "tribe"? **** This is an initiative to preserve our identity and protect our homelands. We are also meaning to protect our well-meaning allies from falling victim as they often donate their land, time, energy and funds to these CPAIN frauds.[2]

---

[2]O'Connor Decl., Exhibit C.

As a sovereign entity, the Delaware Anadarko Nation has an important interest in defining its membership and protecting its history, culture and heritage. This is an essential attribute of an independent political community of indigenous people. It is against this backdrop that the claims by Plaintiff must be considered. It is submitted that hearing Plaintiff's claims is <u>not</u> permissible because it would require the Court to adjudicate official tribal policy carried out by a tribal official. Further, the positions taken by Chief Thomas in support of the CPAIN policy relate to matters of public interest and concern and, therefore, are protected by the First Amendment.

## LEGAL ARGUMENT

## POINT I

## PLAINTIFF'S CLAIMS ARE BARRED IN THEIR ENTIRETY BY THE DOCTRINE OF TRIBAL SOVEREIGN IMMUNITY.

### A.   Tribal Sovereign Immunity Is a Fundamental Limitation on the District Court's Subject Matter Jurisdiction.

Tribal sovereign immunity is a "threshold jurisdictional matter" and a "jurisdictional prerequisite." Hagen v. Sisseton-Wahpeton, 205 F.3d 1040, 1044 (8th Cir. 2000).  Accord Sanderlin v. Seminole Tribe of Florida, 243 F.3d 1282, 1285 (11th Cir. 2001) (recognizing sovereign immunity as part of subject matter jurisdiction analysis).  Sovereign immunity is jurisdictional in nature and an explicit limitation on federal judicial power.  See Edelman v. Jordan, 415 U.S. 651, 678, 94 S.Ct. 1347 (1974) and Ford Motor Co. v. Dept. of Treasury, 323 U.S. 459, 467, 65 S.Ct. 347, 89 L.Ed.2d 389 (1945).

Because issues of immunity present fundamental restrictions on a court's ability to adjudicate a matter, tribal sovereign immunity may be raised at any stage of the proceedings, even on appeal.  Hagen, supra, 205 F.3d at 1044.  Indeed, a court may *sua sponte* conduct an inquiry as to whether a party is entitled to tribal sovereign immunity.  Taylor v. Alabama Intertribal Council Title IV J.T.P.A., 261 F.3d 1032,

#613621v3

1034 (11th Cir. 2001).  See Suarez Corp. v. McGraw, 125 F.3d 222, 227 (4th Cir. 1997)(recognizing obligation to conduct *sua sponte* review of sovereign immunity issues).

Tribal sovereign immunity is addressed as a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  See E.F.W. v. St. Stephen's Indian High School, 264 F.3d 1297, 1302-03 (10th Cir. 2001), c.f. United States v. Government of Virgin Islands, 363 F.3d 276, 284 (3d Cir. 2004) (finding that Eleventh Amendment Immunity is relevant to subject matter jurisdiction). When a court's subject matter jurisdiction is challenged, the party asserting jurisdiction (here, RMI) bears the burden of establishing that jurisdiction properly exists.  Mortensen v. First Federal Savings & Loan Assoc., 549 F.2d 884, 891 (3d Cir. 1977).  Because Defendant presents a factual attack on the Court's subject matter jurisdiction, the Court may consider extrinsic evidence and is not constrained to presume that RMI's allegations are true.  Id.

In sum, when invoked, sovereign immunity completely bars litigation and precludes consideration of the merits of an action.  In the instant matter, tribal sovereign immunity completely bars Plaintiff's claims and requires the dismissal of the Amended Complaint in its entirety, with prejudice.

**B.    The Claims in the Amended Complaint Affect Matters of Tribal Sovereignty and Governance.**

As observed by the Supreme Court, "Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 981 (1998).  Pursuant to long-established federal law, "an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." Kiowa Tribe of Oklahoma v. Mfg. Techs., Inc., 523 U.S. 751, 754, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998).  The waiver of sovereign immunity cannot be implied and must be unequivocally expressed by either the Tribe or Congress." Rupp v. Omaha Indian Tribes, 45 F.3d 1241, 1244 (8th Cir. 1995).  Here, Plaintiff has not asserted that tribal sovereign immunity has been waived by the Delaware Anadarko Nation or has been abrogated by Congress.

Tribal sovereign immunity may also extend to individuals associated with a tribe or tribal entities.  The immunity "extends to tribal officials when acting in their official capacity and within the scope of their authority." Linneen v. Gila River Indian Community, 276 F.3d 489, 492 (9th Cir. 2002).  Accord Lewis v. Clarke, __ U.S. __, 137 S.Ct. 1285, 1290-91, 197 L.Ed.2d 631 (2017).  Furthermore, tribal sovereign immunity cannot be avoided by creative pleading.  Thus, "a plaintiff cannot circumvent tribal immunity by the simple expedient of naming an officer of

the Tribe as a defendant, rather than the sovereign entity." Cook v. AVI Casino Enters., Inc. 548 F.3d 718, 727 (9th Cir. 2002).   The Supreme Court has stated "courts should look to whether the sovereign is the real party in interest to determine whether sovereign immunity bars the suit."   Lewis v. Clarke, supra, 137 S.Ct. at 1290.   Tribal sovereign immunity bars claims that are in reality official-capacity suits.  Lewis v. Clarke, ___ U.S. ___, 137 S.Ct. 1285, 1290-91, 197 L.Ed.2d 631 (2017).   The relief sought in official capacity suits is "only nominally against the official and in fact is against the official's office and thus the sovereign itself."  Id. at 1291 (citing Will v. Michigan Dept. of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)).   "The real party in interest is the government entity, not the named official."  Id.  In contrast, individual capacity suits "seek to impose individual liability upon a government official for actions taken under color of state law."  Id. (citing Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991)).

Accordingly, it is not dispositive that RMI purports to direct its claims against the individual defendant, Chief Thomas, rather than against the Delaware Anadarko Nation.  In determining whether tribal sovereign immunity applies, "courts may not simply rely on the characterization of the parties in the Complaint, but rather must determine in the first instance whether the remedy sought is truly against the sovereign."  Lewis v. Clarke, supra, 137 S.Ct. at 1290; see Cook v. AVI Casino

Enterprises, Inc., 548 F.3d 718, 727 (9th Cir. 2002) ("[A] plaintiff cannot circumvent tribal immunity by the simple expedient of naming an officer of the tribe as a defendant, rather than the sovereign entity."). Therefore, the fact that Plaintiff has directed its claims against Chief Thomas rather than the Delaware Anadarko Nation is not dispositive of whether tribal sovereign immunity is applicable.

In the matter *sub judice*, the claims by RMI are directed towards important aspects of tribal governance and sovereignty. Specifically, the Complaint's allegations relate to an essential component of the Delaware Anadarko Nation's sovereignty – the authority to define who is a member of the Lenni Lenape people and to protect their heritage and Lenapehoking. As stated by Justice Marshall: "A tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community." Santa Clara Pueblo, supra, 436 U.S. at 72, n. 32 (citing Roff v. Burney, 168 U.S. 218 (1897); Cherokee Intermarriage Cases, 203 U.S. 76 (1906)). "Given the often vast gulf between tribal traditions and those which federal courts are more intimately familiar, the judiciary should not rush to create causes of action that would intrude on these delicate matters." Id. This, a federal court should not interfere with issues concerning tribal governance and sovereignty.

The Delaware Anadarko Nation's Constitution expressly defines the requirement for citizenship in the Tribe and empowers the Executive Committee to

regulate citizenship.  In connection with the instant matter, the Tribal Executive Committee was, and is, deeply concerned by entities such as RMI laying claim to Lenape history, spirituality and culture.  In furtherance of this essential sovereign interest, the Tribal Executive Committee enacted its Resolution appointing Chief Thomas as the official representative of the Delaware Anadarko Nation to address issues stemming from the threat posed by CPAINs.  (O'Connor Decl., Exhibit B). The claims in the Complaint are premised upon actions by Chief Thomas wherein he has asserted that RMI is not a part of the Delaware Anadarko Nation and lack indigenous heritage and connection to a historical Indian tribe.   Thus, RMI essentially seeks to challenge the Delaware Anadarko Nation's sovereign right to define citizenship and to protect its history, spirituality and culture.

In actuality, the claims asserted by Plaintiff are directed to Chief Thomas in his "official capacity" as a representative of the Delaware Anadarko Nation implementing its CPAIN policy and, thus, are barred by tribal sovereign immunity. As set forth in the Delaware Nation's Resolution # 2021-008, Defendant was appointed "as a representative to combat [CPAIN] and other matters that could affect the Delaware Nation…." (Dkt. # 21 at 24).[3]  It was in this role as representative of the Delaware Anadarko Nation to address CPAIN that the alleged conduct by

_____

[3] The references in Defendant's Brief are to his status as Chief related to his position as a hereditary chief of the Delaware Anadarko Nation.

Defendant was undertaken.  The provision in the Resolution regarding authority to enter into agreements references Defendant's ability to enter into legal or business transactions on behalf of the Delaware Anadarko Nation.  Here, the actions by Defendant alleged in the Complaint are not business transactions or contracts entered into by Defendant.  Rather, the alleged activities relate to Defendant's advocacy as a representative of the Delaware Anadarko Nation to combat CPAIN as recognized by the Executive Committee.  This advocacy have been undertaken with the knowledge and consent of the Executive Committee.

Indeed, as framed in the Amended Complaint, Thomas' alleged actions were accomplished to implement the Delaware Anadarko Nation's CPAIN policy.  The Amended Complaint is replete with references to the Delaware Anadarko Nation's CPAIN policy.  The underlying basis of Plaintiff's claims is its disagreement with the CPAIN policy and actions to implement it by the Defendant.  Therefore, it is submitted that the remedy being sought is the alteration of the CPAIN policy and, thus, the real party in interest is the Delaware Anadarko Nation.  Thus, the Plaintiff's Complaint should be barred by the doctrine of tribal sovereign immunity.

In sum, Defendant submits that his actions alleged in the Complaint arise from and relate to his advocacy of the Delaware Anadarko Nation's policy to combat CPAIN.  The allegations and claims in the Complaint are directed towards suppressing and punishing that policy.  Thus, the Complaint is really directed against

#613621v3

the CPAIN policy, and the Delaware Anadarko Nation should be considered the real

party in interest.  Because Defendant was acting in his role as official representative

for implementing the CPAIN policy, sovereign immunity bars the Complaint.

## POINT II

## THE CLAIMS IN PLAINTIFF'S AMENDED COMPLAINT ARE BARRED BY THE FIRST AMENDMENT.

The First Amendment to the United States Constitution provides robust protection to speech and expression relating to matters of public interest and concern.  In the instant matter, the Amended Complaint seeks to impose liability upon Chief Thomas based upon his statements regarding the status of the Ramapough Indians.  This speech was undertaken in furtherance of the Delaware Anadarko Nation's CPAIN policy, which involves matters of public interest and controversy.  The First Amendment bars Chief Thomas' liability as a matter of law for his statements which are substantially true, not provably false, or matters of opinion.  Further, Plaintiff must establish "actual malice" under the Supreme Court's First Amendment jurisprudence to impose liability in this case.  Because the Plaintiff cannot overcome the protections of the First Amendment, the Amended Complaint must be dismissed, with prejudice.

### A.   The Protections of the First Amendment Apply to State Law Tort Claims.

It is well-established that the Free Speech Clause of the First Amendment may serve as a defense to state law tort claims.  Snyder v. Phelps, 562 U.S. 443, 451, 131

S.Ct. 1207, 179 L.Ed.2d 172 (2011).  While most prominently applied to defamation

claims[4], courts have consistently recognized the application of First Amendment

protections to other state law claims.  See, e.g., Hustler Magazine, Inc. v. Falwell,

485 U.S. 46, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988) (claim for intentional infliction of

emotional distress) and Blodgett v. Univ. Club, 930 A.2d 210, 222-23 (D.C. 2007)

(claim for false light).  Additionally, courts have regularly held that the protections

of the First Amendment apply to suits for tortious interference.  Farah v. Esquire

Magazine, 736 F.3d 528, 540 (D.C.Cir. 2013); Jefferson City School Dist. No. R-1

v. Moody's Investor Servs., Inc., 175 F.3d 848, 856-58 (10th Cir. 1999); Beverly

Hills Foodland, Inc. v. United Food & Commercial Workers Union, Local 655, 39

F.3d 191, 196-97 (8th Cir. 1994); Unelko Corp. v. Rooney, 912 F.2d 1049, 1057-58

(9th Cir. 1990).  Thus, the First Amendment concerns regarding defamation claims

apply with equal force to other state law causes of action such as those asserted in

the Amended Complaint.

> **B.  The Alleged Statements By Defendant Relate to Matters of Public Concern and Are Entitled to Heightened Protection Under the First Amendment.**

Where, as here, the speech and expression in question relates to matters of

---

[4] See New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686
(1964).

public concern, the First Amendment precludes holding a defendant liable for such

speech.  As summarized by Chief Justice Roberts, speech related to matters of public

concern is entitled to heightened protection:

> "[S]peech on 'matters of public concern' … is 'at the heart
> of the First Amendment's protection.'  Dun & Bradstreet,
> Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 758-59,
> 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985) (opinion of Powell,
> J.) (quoting First Nat. Bank of Boston v. Belotti, 435 U.S.
> 765, 776, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978)).   The
> First   Amendment   reflects   "a   profound   national
> commitment to the principle that debate on public issues
> should  be  uninhibited,  robust,  and  wide-open."    [New
> York Times Co. v. Sullivan, supra, 376 U.S. at 270].  That
> is because "speech concerning public affairs is more than
> self-expression;  it  is  the  essence  of  self-government."
> Garrison v. Louisiana, 379 U.S. 64, 74-75, 85 S.Ct. 209,
> 13 L.Ed.2d 125 (1964).  Accordingly, "speech on public
> issues occupies the highest rung of the hierarchy of First
> Amendment values, and is entitled to special protection."
> Connick v. Myers, 461 U.S. 138, 145, 103 S.Ct. 1684, 75
> L.Ed.2d 708 (1983) (internal quotation marks omitted).

Snyder v. Phelps, supra, 562 U.S. at 451-52.

Speech relates to a matter of public concern where it can "be fairly considered

as relating to any matter of political, social, or other concern to the community."

Connick, supra, 461 U.S. at 146.  Additionally, speech is a matter of public concern

when "it is a subject of legitimate news interest; that is, a subject of general interest

and of value and concern to, the public."  San Diego v. Roe, 543 U.S. 77, 83, 125

S.Ct. 521, 160 L.Ed.2d 410 (2004).  Furthermore, the arguably "inappropriate or

controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern." Rankin v. McPherson, 483 U.S. 378, 387, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987).

In the case at bar, the dispute as to RMI's indigenous status and the Delaware Anadarko Nation's concern about the Ramapough laying claim to Lenape history, spirituality and culture is clearly a public controversy and matter of clear public interest and concern. The CPAIN program implemented by Chief Thomas as a representative of the Delaware Anadarko Nation relates to a matter of political, social or other concern to the community.  It is not a purely private issue and has ramifications beyond the parties to this case.

In sum, the statements and communications attributed to Chief Thomas relate to the CPAIN program of the Delaware Anadarko Nation.  The speech in question relates to matters of public concern and is entitled to heightened protection under the First Amendment.  Accordingly, the causes of action asserted in the Amended Complaint, which are premised upon Chief Thomas's advocacy of the CPAIN policy, fail as a matter of law and should be dismissed in their entirety with prejudice.

## POINT III

**PLAINTIFF FAILS TO ESTABLISH THAT THE STATEMENTS IN ISSUE WERE PROVABLY FALSE AND DEFENDANT ACTED WITH "ACTUAL MALICE" AS DEFINED BY THE SUPREME COURT.**

In addition to the First Amendment bar against liability for speech regarding matters of public concern, Plaintiff's claims in the Amended Complaint are deficient because RMI cannot establish that the alleged statements by Chief Thomas were provably false or made with "actual malice." Thus, the Amended Complaint fails as a matter of law and must be dismissed on this basis as well.

Pursuant to New York Times v. Sullivan and its progeny, public officials and public figures cannot recover under state tort law causes of action for statements or publications "without showing in addition that the publication contains a false statement of fact which was made with 'actual malice,' i.e. with knowledge that the statement was false or with reckless disregard as to whether or not it was true." Hustler Magazine, supra, 485 U.S. at 56. The Supreme Court specifically noted the potential chilling effect on protected speech from permitting recovery of damages under state tort law for expressions that are not provably false. Id. at 53-55. That the Amended Complaint does not assert a defamation claim does not affect the application of First Amendment protections to other state law claims. Moldea v.

#613621v3

-22-

New York Times Co., 22 F.3d 310, 319-20 (D.C.Cir. 1994)("[A] plaintiff may not use related causes of action to avoid the constitutional requisites of a defamation claim.").

    As stated above, the case at bar plainly relates to matters of public concern. Plaintiff, RMI is a public figure whose claims are subject to the "actual malice" standard, which the Supreme Court has deemed applicable to non-defamation state law claims.  The case law divides public figures into two categories: all-purpose public figures and limited purpose public figures.  Gertz v. Robert Welsh, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).  The first category applies to individuals who "occupy positions of such pervasive power and influence that they are deemed public figures for all purposes."  Id. at 345. "Limited public figures" relates to those who become involved in a public controversy and are deemed to be public figures only with respect to that controversy.  Id.  The Third Circuit has established a two-pronged test for determining whether a plaintiff is a limited public figure: (1) whether the matter involves a public controversy, and (2) the nature and extent of plaintiff's involvement in that controversy.  Marcone v. Penthouse International Magazine for Men, 754 F.2d 1072, 1082 (3d Cir. 1985); see also Gertz, supra, 418 U.S. at 352.  It cannot be seriously debated that the dispute underlying this matter involves a public controversy in which Plaintiff, RMI is deeply involved as the purported representative of the Ramapough people.  Thus, Plaintiff must

satisfy the "actual malice" standard to prevail on its claims.  However, Plaintiff cannot carry this burden because the alleged statements by Chief Thomas are substantially true or not provably false.

The lynchpin of the claims asserted in the Amended Complaint is that Chief Thomas "falsely" claimed that RMI's members do not have indigenous descent, ancestry, or lineage.  (Amended Complaint, ¶¶26-28).  Further, the Amended Complaint asserts that the position advocated under the CPAIN policy that RMI is merely a corporation that does not represent indigenous peoples "falsely" ignores the federal and state recognition given to the Ramapough Indians.  (Amended Complaint, ¶¶29-31).  However, these allegedly "false" statements are not provably false and/or relate to matters of opinion regarding issues of public concern that are not actionable.  Indeed, RMI's claim to indigenous tribal status is a matter of long-standing historical dispute.

Any statements or expressions by Chief Thomas relating to the indigenous status of the Ramapough cannot be deemed provably false or made with "actual malice" in view of the fact that the Federal Government has expressly _denied_ recognition of the Ramapough Mountain Indians as an Indian tribe. In 1979, RMI filed a petition for federal recognition as an Indian tribe.  The requirements for such a petition are governed by Federal regulations. See 25 C.F.R. §§83.7(a) – (g)(establishing the mandatory criteria for Federal recognition of an Indian tribe).

After a lengthy administrative process, the Federal Bureau of Indian Affairs ("BIA") issued a Final Determination denying recognition.  Summary Under the Criteria and Evidence for Final Determination against Federal Acknowledgement of the Ramapough Mountain Indians, Inc. 29 (U.S. Dep't of the Interior, Off. Fed. Acknowledgement, RMI-V001-D007, p. 32 of 187, Jan. 16, 1996) ("Historians, anthropologists, and journalists have mentioned many tribes as possible precursors of the RMI: Munsee, Minisink, Tuscarora, Creek, Lenape (generically), Hackensack, and Delaware. However, none of the documentation submitted by the petitioner or any other documents reviewed for the proposed finding connected the earliest documented RMI ancestors with any of the tribes that once resided in New York or New Jersey."); Final Determination Against Federal Acknowledgement of the Ramapough Mountain Indians, Inc., 61 Fed.Reg. 4476 (Feb. 6, 1996)[5].  In reaching this determination, the BIA found no evidence to show that RMI's membership consists of individuals who descend from an historical Indian tribe and concluded that the RMI are descended from Afro-Dutch families who lived in Manhattan until the late eighteen century then migrated to northeastern New Jersey. Id.

The BIA's determination that RMI does not satisfy the requirements for

---

[5] O'Connor Decl., Exhibits D and E.

recognition as an Indian tribe was affirmed by the Department of the Interior Board on Indian Appeals, the U.S. District Court for the District of Columbia, and the D.C. Circuit Court of Appeals. <u>In re Federal Acknowledgement of Ramapough Mountain Indians, Inc.</u>, 31 IBA 61 (July 18, 1997), <u>aff'd</u> <u>Ramapough Mountain Indians v. Babbitt</u>, Civ. No. 98-2136 (JR), 2000 U.S. Dist. LEXIS 14479 (D.D.C. Sept. 30, 2000), <u>aff'd sub nom.</u>, <u>Ramapough Mt. Indians v. Norton</u>, 25 Fed.Appx. 2, 2001 U.S. App. LEXIS 27805 (D.C.Cir. 2001).

In sum, the alleged statements by Chief Thomas that RMI lacks indigenous decent, ancestry, or lineage traceable to historical Indian tribes of New Jersey are supported by the Federal Government's findings and rejection of RMI's petition for recognition. To find that Chief Thomas' statements are "false" would require this court to overturn the determination of the BIA, which was affirmed by several appeal tribunals and courts. This Court obviously lacks the authority to do so. Consequently, the statements regarding RMI's status cannot be deemed to be provably false or, at the very least, are matters of opinion that are not actionable. Thus, Plaintiff's claims must fail as a matter of law and the Amended Complaint should be dismissed in its entirety, with prejudice.

## POINT IV

## THE DEFENDANT'S ALLEGED MOTIVES FOR ADVOCATING THE DELAWARE NATION'S CPAIN POLICY ARE TOTALLY IRRELEVANT IN THE APPLICATION OF FIRST AMENDMENT PROTECTIONS.

The protections of the First Amendment must be established regardless of the speaker's alleged motives.  The Supreme Court has specifically concluded that "even when a speaker [is] motivated by hatred or ill will his expression is protected by the First Amendment."  Hustler Magazine, supra, 485 U.S. at 53 (citing Garrison v. Louisiana, 397 U.S. 64, 73, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964)).  Accord Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co, 54 Cal.Rptr.2d 888 (Cal.App. 1st Dist. 1996); Worldwide Primates v. McGreal, 26 F.3d 1089, 1092 (11th Cir. 1994).

In the Amended Complaint, Plaintiff makes a number of assertions regarding the putative motives behind the Delaware Anadarko Nation's CPAIN policy being advocated by Chief Thomas.  Specifically, RMI alleges that the motivation for the Delaware Anadarko Nation's CPAIN policy and Chief Thomas' advocacy thereof are somehow related to a covert desire to divert opportunities for development of casinos to the Delaware Anadarko Nation.  (See Amended Complaint, ¶¶22-24; ¶¶32-35). These assertions are plainly false. As plainly stated in the Resolution of the Delaware Anadarko Nation, the CPAIN policy is designed to protect the cultural

heritage of the Lenape people.

Moreover, as per the controlling Supreme Court precedent, the motives alleged in the Amended Complaint have <u>no</u> bearing whatsoever on the protections of the First Amendment.  Because Chief Thomas's advocacy of the CPAIN policy is matter of public concern and cannot be deemed to be provably false or made with actual malice, he is protected by the First Amendment.  Thus, the Court must disregard the irrelevant accusations in the Amended Complaint in conducting its analysis of the application of the First Amendment to this action.

## POINT V

**THE AMENDED COMPLAINT FAILS TO STATE A CLAIM BASED UPON ALLEGED "RACIAL DISCRIMINATION" THAT IS ACTIONABLE UNDER THE NJLAD.**

Count I of the Amended Complaint is premised upon the allegation that Chief Thomas' advocacy of the Delaware Nation's CPAIN policy somehow constitutes "racial discrimination" against RMI.  Contrary to this misguided position, it is demonstrable that at the heart of the CPAIN policy are political, not racial, considerations.  Thus, RMI cannot state a claim for racial discrimination actionable under the NJLAD.

The Federal Constitution recognizes the political status of Indian Tribes.  U.S. Const. art. I, §8 (empowering Congress "to regulate commerce with foreign Nations, and with Indian Tribes.").  The relationship between the government and Indian Tribes has always been considered to be a relationship between political entities. See Cherokee Nation v. Georgia, 30 U.S. (5 Pet.) 1, 16, 8 L.Ed. 25 (1831) (Marshall, C.J.) (describing Indian Tribes as "domestic dependent nations.").  "Historically, the formal relationship between the United States and American Indian tribes has been political, rather than race-based." Kahawaiolaa v. Norton, 386 F.3d 1271, 1278 (9th Cir. 2004); Cohen's Handbook of Federal Indian Law, §4.01[1][a](2012).

Pursuant to the Indian Reorganization Act enacted in 1934, the Government authorized tribes to apply for federally-recognized status.  See 25 U.S.C. §§5101, et seq.  Federal recognition of Indian Tribes is "a formal political act," which "institutionaliz[es] the government-to-government relationship between the tribe and the federal government."  Cal. Valley Miwok Tribe v. United States, 515 F.3d 1262, 1263 (D.C.Cir. 2008)(quoting Cohen's, supra, at §3.02[3]).

Although related to ancestry, tribal recognition and sovereignty focus on a group's status as a continuation of a political entity and relationship to a historical Indian tribe.  See 25 C.F.R. §83.11(c) and (d); Sarah Krakoff, They were Here First: American Indian Tribes, Race, and the Constitutional Minimum, 69 Stan. L. Rev. 491, 538 (2017)(descent criteria under federal regulations is "a proxy for connection[] to a political entity, specifically a tribe, which existed historically."). See Federal Acknowledgement of Indian Tribes, 80 Fed. Reg. 37862, 37867 (2015). Recognition of tribal status is, thus, inherently a political matter.  Morton v. Mancari, 417 U.S. 535, 553, 94 S.Ct. 2474, 41 L.Ed.2d 296 (1974).

In the case at bar, the NJLAD claim in the Amended Complaint is in essence based upon Chief Thomas advocating the views under the CPAIN policy.  That policy relates to the political question of who should be recognized as an Indian Tribe.  The dispute as to RMI's status is not a race-based dispute.  Thus, Chief

Thomas' advocacy of the CPAIN policy is not racial discrimination, and Count I of the Amended Complaint fails to state a claim for relief.

## POINT VI

## PLAINTIFF'S COMPLAINT FAILS TO STATE CLAIMS FOR WHICH RELIEF CAN BE GRANTED AGAINST THE DEFENDANT.

In <u>Ashcroft v. Iqbal</u>, 556 <u>U.S.</u> 662, 129 <u>S.Ct</u>. 1937, 173 <u>L.Ed.</u>2d 868 (2009), the Supreme Court explained and amplified the interpretation of the pleadings requirements set forth in <u>Bell Atlantic Corp. v. Twombly</u>, 550 <u>U.S.</u> at 544, 127 <u>S.Ct</u>. 1955, <u>L.Ed.</u>2d 929 (2007).  The <u>Iqbal</u> Court noted that pursuant to <u>Fed. R. Civ. P.</u> 8(a)(2) "a pleading must contain a 'short and plain statement of the claim showing the pleader is entitled to relief.'"  550 <u>U.S.</u> at 677-78.  While <u>Rule</u> 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation".  <u>Id</u>. at 578 (citing <u>Twombly</u>, <u>supra</u>, 550 <u>U.S.</u> at 555).  Thus, pleadings that merely set forth "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  <u>Id</u>.  Also insufficient is a Complaint that provides "naked assertion(s)" that are devoid of "further factual enhancement."  <u>Id.</u>  (citing <u>Twombly</u>, <u>supra</u>, 550 <u>U.S.</u> at 557).

The <u>Iqbal</u> Court stated that in order to survive a motion to dismiss, a complaint must satisfy a "plausibility standard."  556 <u>U.S.</u> at 678 (citing <u>Twombly</u>, <u>supra</u>, 550 <u>U.S.</u> at 570).  Under this standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Id</u>.

As Justice Kennedy further explained, "[a] claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable" to the plaintiff. Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008); *see also* Twombly, supra, 550 U.S. at 557. "However, a court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss." Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).

In the Amended Complaint, there are a number of bald assertions devoid of factual enhancement regarding the alleged statements made by Chief Thomas that support RMI's claims. Throughout the Amended Complaint, RMI makes conclusory assertions about the alleged "falsity" of positions taken by Chief Thomas and communications with allies, friends, and prospective relations of RMI. Significantly, however, the "who, what, when, where, and how" of these communications is severely lacking. The Amended Complaint fails to provide sufficient factual support as to the identity of the individuals contacted by Chief Thomas, when these communications occurred, the manner of the communications, and, other than a conclusory summary, the substance of the communications. Thus,

even if the Amended Complaint can overcome the hurdles of Tribal Sovereign Immunity and the First Amendment, it fails to allege the facts supporting RMI's claims in sufficient detail and should be dismissed in its entirety.

## **CONCLUSION**

For the foregoing reasons, the Amended Complaint of Plaintiff, RMI, Inc., as against Defendant, Daniel Thomas, should be dismissed in its entirety, with prejudice.

Respectfully submitted,

LUM, DRASCO & POSITAN LLC

By: /s Kevin J. O'Connor
    KEVIN J. O'CONNOR
    A Member of the Firm

Dated: December 16, 2022

#613621v3