UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAMAPOUGH MOUNTAIN INDIANS, INC., <br><br> Plaintiff, <br><br> -vs- <br><br> DANIEL THOMAS, <br><br> Defendant. | Case No.: 2:21-cv-09649-JXN-JBC <br><br><br> *Document Filed Electronically* |

---

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF
MOTION TO DISMISS AMENDED COMPLAINT**

---

 

                                      LUM, DRASCO & POSITAN LLC
                                      103 Eisenhower Parkway – Suite 401
                                      Roseland, New Jersey 07068-1049
                                      (973) 403-9000
                                      NJ Attorney ID # 029021991
                                      koconnor@lumlaw.com
                                      Attorneys for Defendant, Daniel Thomas

DENNIS J. DRASCO, ESQ.
Of Counsel

KEVIN J. O'CONNOR, ESQ.
Of Counsel and On the Brief

#757757v1

-i-

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF CITATIONS ...................................................................................... II
PRELIMINARY STATEMENT ............................................................................ 1
LEGAL ARGUMENT ........................................................................................... 2
POINT I ................................................................................................................. 2

    TRIBAL SOVEREIGN IMMUNITY BARS RMI'S STATE LAW
    CLAIMS WHICH INTRUDE UPON THE IMPLEMENTATION
    OF THE OFFICIAL POLICY OF THE DELAWARE NATION. ............. 2

POINT II ................................................................................................................ 8

    THE FIRST AMENDMENT BARS RMI'S CLAIMS BASED
    UPON DEFENDANT'S ADVOCACY OF THE DELAWARE
    NATION'S CPAIN POLICY. .................................................................... 8

CONCLUSION ................................................................................................... 15

-ii-

## **TABLE OF CITATIONS**

**PAGE**

**Cases**

Cook v. AVI Casino Enterprises, Inc., 548 F.3d 718, 727 (9th Cir. 2002) ................................... 3

Garrison v. Louisiana, 379 U.S. 64, 78-79, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964)................... 9, 10

Healy v. James, 408 U.S. 169, 188 (1972) ................................................................................ 14

Lewis v. Clarke, ___U.S. ___, 137 S.Ct. 1285, 1290-91, 197 L.Ed.2d 631 (2017) ............... 3, 5, 6

Long v. Barrett, 2018 U.S. Dist. LEXIS 57583, No. 2:17-cv-5741-KM-SCM (D.N.J., Apr. 3, 2018)................................................................................................................ 5

Matal v. Tam, ___ U.S. ___, 137 S.Ct. 1744 (2017) .................................................................. 14

New York Times v. Sullivan, 376 U.S. 254, 280, 84 S.Ct. 376, 11 L.Ed.2d (1964).......... 9, 12, 13

St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968) ................... 9

United States v. Alvarez, 567 U.S. 709, 717 (2012).................................................................. 12

United States v. Schwimmer, 279 U.S. 644, 655 (1929)............................................................ 15

Vann v. Kempthorne, 534 F.3d 741 (D.C.Cir. 2008) ................................................................... 6

Virginia v. Black, 538 U.S. 343 (2003) ..................................................................................... 12

Watts v. United States, 394 U.S. 705, 708 (1969)..................................................................... 13

#757757v1

## **PRELIMINARY STATEMENT**

Defendant, Daniel Thomas ("Chief Thomas" or "Defendant"), submits this Reply Brief in response to the opposition to his Motion to Dismiss the Amended Complaint filed by Plaintiff, Ramapough Mountain Indians, Inc. ("RMI" or "Plaintiff").

While laced with rhetoric, accusations, and revisionism, RMI's opposition fails to demonstrate that its Amended Complaint can overcome the significant barriers of the Doctrine of Tribal Sovereign Immunity and the protections of the Free Speech Clause of the First Amendment. In reality, the Amended Complaint has one overarching purpose – to suppress Defendant's advocacy of the Delaware Anadarko Nation's official policy of CPAIN. Because RMI disagrees with the Delaware Anadarko Nation's official policy, it seeks to stifle legitimate questioning of its status through the guise of a civil action under a state statute and tort law. However, the attempt to suppress Defendant's advocacy of the CPAIN policy intrudes upon the Delaware Anadarko Nation's prerogatives as a sovereign entity and its official policy. Further, the attempted suppression runs afoul of the First Amendment because the Defendant's advocacy relates to matters of significant public interest and concern. Thus, the Amended Complaint must fail and should be dismissed, with prejudice.

# LEGAL ARGUMENT

## POINT I

### TRIBAL SOVEREIGN IMMUNITY BARS RMI'S STATE LAW CLAIMS WHICH INTRUDE UPON THE IMPLEMENTATION OF THE OFFICIAL POLICY OF THE DELAWARE NATION.

As set forth in Defendant's moving brief, the claims in the Amended Complaint are directed towards Chief Thomas' advocacy of the Delaware Anadarko Nation's CPAIN policy. While RMI disagrees with it, the CPAIN policy is a product of the fundamental authority of the Delaware Anadarko Nation as a sovereign entity. RMI's exclusion of the Delaware Anadarko Nation as a party and attempt to limit the Amended Complaint to claims solely against Chief Thomas do not affect the application of the Doctrine of Tribal Sovereign Immunity because Defendant was acting in an official, not individual, capacity. The real goal of the lawsuit and relief sought is to suppress the Delaware Anadarko Nation's CPAIN policy. This is the precise reason why Tribal Sovereign Immunity Bars the Amended Complaint.

Throughout its Opposition Brief, RMI argues that Tribal Sovereign Immunity does not apply because the only defendant named in the Amended Complaint is Chief Thomas. (See Pb2, Pb4-5, Pb8). In RMI's view, because the relief sought is purportedly against Chief Thomas and not the Delaware Anadarko Nation, he is being sued in his individual capacity. (See Pb7). However, such an attempt at artful

pleading is not dispositive and a more searching analysis must be applied to ascertain whether Tribal Sovereign Immunity is applicable.

As the Supreme Court has warned, in determining whether Tribal Sovereign Immunity applies, *"courts may not simply rely on the characterization of the parties in the complaint, but rather must determine in the first instance whether the remedy sought is truly against the sovereign."* Lewis v. Clarke, ___U.S. ___, 137 S.Ct. 1285, 1290-91, 197 L.Ed.2d 631 (2017)[Emphasis supplied]. Thus, "a plaintiff cannot circumvent tribal immunity by the simple expedient of naming an officer of the tribe as a defendant, rather than the sovereign entity." Cook v. AVI Casino Enterprises, Inc., 548 F.3d 718, 727 (9th Cir. 2002).[1] Accordingly, the Supreme Court stated that "courts should look to whether the sovereign is the real party in interest to determine whether sovereign immunity bars the suit." Lewis v. Clarke, supra, 137 S.Ct. at 1290.

In the case at bar, although RMI argues that its Complaint is styled as an individual-capacity suit directed solely against Chief Thomas, in reality the relief is directed at suppressing the official policy of the Delaware Anadarko Nation against

---

[1] Contrary to RMI's assertion, the Cook decision was not "superseded" by the Supreme Court's decision in Lewis. (Pb6). The Cook court's conclusion that a plaintiff's labelling of its complaint as being asserted in an individual capacity is not dispositive is consonant with the Lewis decision's determination that the court must first determine if the remedy sought is truly against the sovereign as opposed to the individual.

3

CPAINs. Throughout the Amended Complaint, RMI consistently references the CPAIN policy as the root cause of its grievances. The essence of RMI's claims is that the advocacy of the CPAIN policy by Chief Thomas is the basis for RMI's causes of action. The Amended Complaint characterized Chief Thomas as claiming to be on a mission on behalf of the Delaware Anadarko Nation against CPAIN when he asserts that RMI does not represent indigenous individuals or a nation. (See Amended Complaint ¶29). RMI references Chief Thomas' advocacy of the CPAIN policy in his communications with other individuals and entities, statements in social media, and artistic work as the basis for its claims. (Amended Complaint ¶¶30, 31, 53, 70, 97). Thus, even as framed by RMI, Chief Thomas' alleged actions were accomplished to implement the Delaware Anadarko Nation's CPAIN policy.

Furthermore, in this context it is clear that the relief sought in the Amended Complaint is directed to the suppression of the Delaware Anadarko Nation's CPAIN policy. The proposed permanent injunctive relief in the Amended Complaint seeks to censor Chief Thomas and to silence him. The damages sought by RMI for "tortious interference" are based upon the advocacy of the CPAIN policy and designed to stifle and suppress the assertion of that policy.

Further the factual background supporting the denial of Tribal Sovereign Immunity in the cases cited by RMI is distinguishable from the matter *sub judice*, which involves the advocacy of an official tribal policy by a representative appointed

4

#757757v1

for that purpose. In <u>Lewis</u>, a tribal employee was sued for causing a motor-vehicle accident through his personal negligence, on an interstate highway on non-tribal lands. 137 S.Ct. at 1291. The Supreme Court held that Tribal Sovereign Immunity did not apply because the tribal employee was sued in his personal capacity based upon his personal negligence, even though he was acting in the scope of his employment. <u>Id</u>. Unlike the instant matter, the tribal employee in <u>Lewis</u> was acting as an individual and was not implementing any discretionary tribal political policy.

Similarly, RMI's position is not supported by its citation to <u>Long v. Barrett</u>, 2018 U.S. Dist. LEXIS 57583, No. 2:17-cv-5741-KM-SCM (D.N.J., Apr. 3, 2018). In <u>Long</u>, plaintiffs lent funds to certain individuals and entities. One of the loanees allegedly pledged his right to monthly dividends from his Tribe as security for the loan. The plaintiffs were not repaid and did not receive an assignment of the dividends for that purpose. The plaintiffs filed a complaint and asserted claims against the Tribe's Director of the Treasury arising from his failure to process the assignment of the dividends that were pledged as he had allegedly promised to do. The <u>Long</u> court concluded that the defendant tribal official was acting in his official capacity and entitled to sovereign immunity for those acts. <u>Id</u>. at *11-15. Additionally, the court found that the complaint failed to allege a plausible claim that the tribal official acted in an individual capacity that would preclude immunity. Thus, the <u>Long</u> case does not undermine the principle that where the relief is really

5

directed against the sovereign, the labelling of the claim as an individual capacity suit in the complaint is not controlling.  Also inapposite is RMI's citation to the decision in Vann v. Kempthorne, 534 F.3d 741 (D.C.Cir. 2008)(See Pb9).  That case involved the issue of application of sovereign immunity to a tribal official who acted unconstitutionally, because their action was alleged to violate the U.S. Constitution directly or because it was in violation of a federal statute or federal regulation.  534 F.3d at 749-50.  However, the Amended Complaint solely alleges violation of a state statute and state tort claim and not violation of federal law.[2]

In sum, the underlying basis of the claims being asserted, as well as the relief sought in the Amended Complaint, is directed to RMI's disagreement with the CPAIN policy and actions undertaken by Chief Thomas to advocate that policy.  The real remedy being sought is the suppression of the CPAIN policy.  Accordingly, under the inquiry mandated by the Lewis decision, the real party in interest is the Delaware Anadarko Nation.  Thus, the Plaintiff's Complaint should be barred by the doctrine of tribal sovereign immunity.

In its Opposition Brief, RMI attempts to assert that Defendant has not established his status as a tribal official for purpose of sovereign immunity.  (Pb3-

---

[2] Additionally, RMI argues that Tribal Sovereign Immunity cannot be applied "extra-territorially." (Pb10-12).  However, none of the cases cited by RMI applied to a situation where a tribal representative is effectuating an official tribal policy derived from its sovereign status.

6

#757757v1

4).  RMI argues that defendant would be required to establish that each and every action in furtherance of the CPAIN policy was expressly authorized by the Delaware Anadarko Nation in advance.  (Pb8-9).  Plaintiff's position in this regard misreads the Resolution authorizing Defendant to represent the Delaware Anadarko Nation with respect to its CPAIN policy and is little more than naysaying.

As set forth in the Delaware Anadarko Nation's Resolution # 2021-008, Defendant was appointed "as a representative to combat [CPAIN] and other matters that could affect the Delaware Nation…."  (Dkt. # 21 at 24).  It was in this role as representative of the Delaware Anadarko Nation to address CPAIN that the alleged conduct by Defendant was undertaken.  The verbiage from the Resolution cited by RMI regarding authority to enter into agreement references Defendant's ability to enter into legal or business transactions on behalf of the Delaware Anadarko Nation.  Here, the actions by Defendant alleged in the Complaint are not business transactions or contracts entered into by Defendant.  Rather, the alleged activities relate to Defendant's actions as a representative of the Delaware Anadarko Nation to combat CPAIN as recognized by the Executive Committee.  These actions have been undertaken with the knowledge and consent of the Executive Committee.

In sum, Defendant submits that his actions alleged in the Complaint arise from and relate to his advocacy of the Delaware Anadarko Nation's policy to combat CPAIN.  The allegations and claims in the Amended Complaint are directed towards

suppressing that policy. The Amended Complaint is actually directed against the CPAIN policy, and the Delaware Anadarko Nation should be considered the real party in interest. Because Chief Thomas was acting in his role as official representative for implementing the CPAIN policy, sovereign immunity bars the Amended Complaint.

## POINT II

### THE FIRST AMENDMENT BARS RMI'S CLAIMS BASED UPON DEFENDANT'S ADVOCACY OF THE DELAWARE NATION'S CPAIN POLICY.

As set forth in Defendant's Motion to Dismiss, the Free Speech Clause of the First Amendment is an appropriate defense to state law claims. (Db18-19). This protection, while typically applied to defamation cases, also applies to other tort claims. (Db19). Indeed, the First Amendment has specifically been recognized as a defense to claims for tortious interference. Id.[3] The advocacy of the CPAIN policy clearly involves a matter of public importance and dispute that is entitled to heightened protection. (See Db20-21). Public discussion of such issues should be open and uninhibited. It is against these First Amendment principles that the alleged actions by Chief Thomas must be evaluated.

---

[3] RMI's intimation that the Third Circuit would not recognize the First Amendment as a defense to a tort claim where there is no defamation claim (Pb22) runs against the weight of authority from other jurisdictions that has been cited.

8

#757757v1

The fundamental premise of the claims asserted in the Amended Complaint is that the CPAIN policy being advanced by Chief Thomas "falsely" misstates the Ramapough's indigenous heritage and ancestry. Thus, RMI must show that any statements, comments or communications in support of the CPAIN policy were false and made with "actual malice" in order to be actionable. Under the standard articulated by the Supreme Court, a statement is made with "actual malice" when made with "knowledge that it was false or with reckless disregard of whether it was false or not." New York Times v. Sullivan, 376 U.S. 254, 280, 84 S.Ct. 376, 11 L.Ed.2d (1964). Whether there was "reckless disregard" is not "measured by whether a reasonably prudent man would have published, or would have investigated before publishing." St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). Rather, a defendant must have "in fact entertained serious doubts as to the truth of his publication," id., or have had a "high degree of awareness of their possible falsity." Garrison, supra, 379 U.S. at 74.

Furthermore, the "actual malice" standard applies even if the statements in question were made with ill-will or spite. Garrison v. Louisiana, 379 U.S. 64, 78-79, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964)(See Db27-28). Accordingly, the "actual malice" standard is somewhat more accurately described as "constitutional malice" to distinguish it from mere spitefulness or ill-will. RMI's assertion that issues of

9

#757757v1

motive are relevant to determining whether First Amendment protections apply is simply wrong.

In its Opposition Brief, RMI argues that Defendant's position based upon the actual/constitutional malice standard is a "nullity" because it will allege and show at trial that Chief Thomas acted with actual malice. (Pb22-26). RMI contends that Chief Thomas was aware that its members were indigenous and argues that many of his statements were false. (Pb23).[4] RMI characterizes Chief Thomas advocacy of the CPAIN policy as "malicious actions" and the "promulgation of deliberate falsehoods" arguing that this would be sufficient to avoid the protection of the First Amendment. (Pb24). It is not.

Again, it must be stressed that the term "actual malice" is distinguishable from the concept of ill-will, spite, or improper motive. See Garrison, supra, 379 U.S. 78-79. Allegations of bad motive or spitefulness, without "constitutional malice," are not relevant to determining whether speech is protected by the First Amendment. Thus, RMI's misplaced assertions of "hate speech" and motives grounded in casino gambling do not create "constitutional malice."

---

[4] The Amended Complaint contains insufficient allegations as to the specifics of the alleged false statements by Chief Thomas. While broadly alleging that Chief Thomas "falsely claims" that RMI's members lack indigenous descent, ancestry or lineage (Amended Complaint ¶¶26-27), and describing Chief Thomas' assertions as being part of a "false narrative" (Id., ¶29), RMI fails to allege the specifics of what Chief Thomas said and to whom.

10

At the heart of this matter is a dispute about the indigenous status of the RMI. The basis for the Delaware Anadarko Nation's CPAIN policy advocated by Chief Thomas is consistent with various historical sources and the final determination of the federal government that was affirmed by the reviewing federal courts. As set forth in Defendant's Motion to Dismiss (Db24-26), after intensive, multi-year administrative proceedings, the United State Department of the Interior, Bureau for Indian Affairs ("BIA") rejected RMI's application to be recognized as an Indian Tribe. In reaching this determination, the BIA referenced numerous sources, including materials by historians, anthropologists and journalists. The BIA found that there was no evidence to demonstrate that RMI's members descend from a historical Indian tribe. The BIA's findings and conclusions demonstrate there has been a long-standing historical dispute regarding the indigenous status of RMI's members.[5] The CPAIN policy advocated by Chief Thomas is consistent with the BIA's findings.

Accordingly, at the very least, the CPAIN policy presents fairly debatable matters regarding an issue of public importance. Thus, statements by Chief Thomas in support of the CPAIN policy cannot, as a matter of law, be determined to be made

---

[5] While RMI disputes these conclusions, it cannot ask this Court to disregard the determination of a Federal Agency with primary jurisdiction in this area or the affirmance of the final decision by the D.C. District and Court of Appeals for the D.C. Circuit.

with knowledge of falsity or reckless disregard as to falsity. Contrary to RMI's arguments, the instant matter presents a case where it is entirely appropriate to apply the protection of the First Amendment to preclude claims at the motion to dismiss stage.

Although Defendant's statements in connection with his advocacy of the CPAIN policy are subject to the "actual/constitutional malice" standard of <u>New York Times v. Sullivan</u> and its progeny, RMI attempts to escape the protections of the First Amendment by arguing that certain communications and actions by Chief Thomas constitute "true threats." (Pb27-28). Specifically, RMI cites Defendant's June 2022 visit to its property, postings on social media by Chief Thomas and his alleged followers, and a rap song disseminated on YouTube as examples of alleged "threats" not entitled to protection. However, RMI exaggerates and misconstrues these statements and communications which, although hyperbolic and perhaps containing intemperate language, do not convey real threats to the safety of RMI representatives or its members.

The protections of the First Amendment apply to speech unless it falls into certain circumscribed categories. <u>United States v. Alvarez</u>, 567 U.S. 709, 717 (2012). The Supreme Court has recognized "true threats" as a narrow category of speech that is beyond protection. <u>Virginia v. Black</u>, 538 U.S. 343 (2003). Such "true threats" constitute "those statements where the speaker means to communicate

a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." Id. at 359. Here, the visit to RMI's site, postings on social media, and rap song cited by RMI do not constitute "true threats" that are not protected.

The assertion by RMI that Chief Thomas' speech constitutes "true threats" must be examined "against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust and wide-open." New York Times v. Sullivan, supra, 376 U.S. at 270.  The dispute regarding RMI's indigenous status is a matter of public importance and political in nature.  In this area, speech "may well include vehement, caustic, and sometimes unpleasantly sharp attacks." Id.  Language that may be employed in heated discussion of public and political issues "is often vituperative, abusive, and inexact." Watts v. United States, 394 U.S. 705, 708 (1969).  In the case at bar, the speech and actions alleged by RMI were clearly rhetorical and hyperbolic in nature and relate to a matter of public interest and importance.  No reasonable person could view the statements that were made as a real, imminent threat of violence against RMI and its members.

With respect to Chief Thomas' visit to RMI's property in June 2022, RMI contends this constituted a trespass, that Defendant carried a "war club," and he made a "propagandistic video" at the site that was posted to Facebook.  However, RMI neglects to mention that it attempted to prosecute a complaint against Chief

13

#757757v1

Thomas for his visit and the complaint was dismissed. RMI member Steven Smith filed an eight-count complaint against Defendant in the Mahwah Municipal Court assigned Complaint # 0233_2022 00102. On July 19, 2022, the matter was heard by the Hon. Richard J. Brady, J.M.C., who determined that probable cause did not exists for the allegations in the complaint. Accordingly, the complaint was dismissed. In view of this decision, Chief Thomas' actions during his visit to the RMI site cannot reasonably be viewed as being "true threats" against RMI.

Furthermore, the assertion in RMI's Opposition Brief that Chief Thomas engaged in "hate speech" does not defeat the protections of the First Amendment or establish a claim that his speech constitutes discrimination that violates the NJ LAD. The First Amendment does not just protect civil and polite speech, but also protects speech that is caustic or intemperate. The freedoms protected by the First Amendment "must be accorded to ideas we hate or sooner or later they will be denied to the ideas we cherish." Healy v. James, 408 U.S. 169, 188 (1972). The Supreme Court has made it clear that the First Amendment extends to speech that expresses hateful or derogatory views. See Matal v. Tam, ___ U.S. ___, 137 S.Ct. 1744 (2017). As the Matal Court emphasized, "speech that demeans on the basis of race, ethnicity, gender, religion, age, disability, or any other similar ground is hateful; but the proudest boast of our free speech jurisprudence is that we protect the freedom to express 'the thought that we hate.'" 137 S.Ct. at 1764 (quoting United States v.

14

Schwimmer, 279 U.S. 644, 655 (1929)(Holmes, J., dissenting).  Thus, even if Defendant's statements could be viewed as "hate speech" (which he denies), such statements remain protected by the First Amendment.

## CONCLUSION

For all the foregoing reasons, Defendant respectfully submits that the Amended Complaint should be dismissed, with prejudice.

                                        Respectfully submitted,

                                        LUM, DRASCO & POSITAN LLC
                                        Attorneys for Defendant

                                By: */s/ Kevin J. O'Connor*
                                        KEVIN J. O'CONNOR
                                        A Member of the Firm

Dated:  January 19, 2023